**BRINKER v. UNITED STATES.**

**No. 31194.**

United States District Court
N. D. California, S. D.

Nov. 20, 1953.

Myrick & Deering & Scott, San Francisco, Cal., by J. M. Scott, San Francisco, Cal., attorneys for plaintiff.

L. H. Burke, U. S. Atty., Los Angeles, Cal., G. A. Blackstone, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

W. B. Brinker, plaintiff, is a resident of San Francisco. For more than forty-six years he has been engaged in the construction business. For the past twenty-two years he has also been engaged in operating a 5,000 acre cattle ranch in California. Since 1935 he has been interested in gold mines, and gold mining ventures.

On February 6, 1937 plaintiff and others organized Caribou Gold Dredging Company under the laws of Nevada, with an authorized capital stock of 50,000 shares without par value. This company was organized to develop placer mining claims located in Alaska. Estimates at the time placed a value of over $3,000,000 on the gold that could be mined from these claims. Caribou Company planned

to make application to the Reconstruction Finance Corporation for a loan of approximately $250,000, to be used for the purchase of a gold dredging machine. The original capitalization of the corporation was $20,000. Of this amount plaintiff paid in $5,000, for which he was issued 5,600 shares of nonassessable stock.

This original capital was soon used up in initial development work and for the purchase of a tractor. More money was needed. In the period from August, 1937, to December, 1940, plaintiff and others among the stockholders advanced money on four separate occasions. The total amount advanced was $31,755. In each case the amount given was substantially in proportion to the original cash invested. In the year 1941 plaintiff received a promissory note from the company in the sum of $8,645, payable in two years, for all advances made by him. This note was issued in exchange for all other notes held by the plaintiff evidencing his four advances. Some time following August, 1938, application was made to the R. F. C. for a loan to finance the construction of the gold dredging machine, but the application was refused.

On April 25, 1938, Caribou Company entered into an agreement with Walter Johnson Company to have it operate the mining claims. The agreement provided that Walter Johnson Company would carry on further exploratory work, and would pay to the Caribou Company $45,000 plus one-third of the net profits realized from the successful exploration of the claim.

On or before February 15, 1940, the Walter Johnson Company made application for a R. F. C. loan of $250,000 which was granted on May 22, 1940, subject to several conditions. The prerequisites to be fulfilled before the loan would be made were that a new corporation be organized, and that junior financing in the amount of $100,000 be deposited in trust, which sum was to be used in the gold mining project.

Plaintiff in exchange for a one-half interest in the net profits, and equal voice in the management of the Caribou Creek venture, entered into an agreement with Walter Johnson Company on June 19, 1940, to furnish the $100,000 junior financing.

From August 8, 1940, until October 17, 1940, plaintiff advanced $10,949.82 to be used for further development work, and for the preparation of an engineer's report required by the R. F. C.

Pursuant to R. F. C. requirements, plaintiff and Walter Johnson Company formed the Brinker-Johnson Company with an authorized capital stock of 1,000,000 shares of a par value of one cent a share. Only 20,000 shares were issued, for a total contribution of $200, plaintiff holding 10,000 of these shares.

Walter Johnson Company, to which Caribou Company had assigned all of its claims, contracts, and water rights, on December 17, 1940, assigned said claims, etc., to Brinker-Johnson Company, which assumed the obligations of the Walter Johnson Company to the Caribou Company.

In compliance with his agreement, plaintiff advanced the sum of $100,000 of additional junior financing from November 26, 1940 to January 17, 1941. As in the case of Caribou Company, the Brinker-Johnson Company issued a single note in the sum of $100,000, cancelling all prior notes. The company also issued its demand note in the sum of $10,949.76, representing the advances made by Brinker before the new corporation was formed. All of these notes were subordinate to the proposed R. F. C. loan.

Plaintiff invested in four other mining ventures which were in one way or another connected with the original Caribou undertaking. He also engaged in two mining ventures unrelated to the Caribou Creek enterprise. The first of these netted him $2,248.28 on an investment of $5,000. The other venture was the "Seven Aces Mine" in Sierra County, in which he purchased a half interest in 1939 for the sum of $12,150. This latter investment has so far produced no income.

Section 23(k) of the Internal Revenue Code provides that a debt which becomes worthless within the taxable year shall be allowed as a deduction. in computing taxpayer's net income if the loss was incurred in taxpayer's trade or business.

There are two issues to be considered in determining whether plaintiff's advances to the Caribou Company and to the Brinker-Johnson Company fall within this statute. These are: (1) did the claimed loss actually arise from a bona fide "debt", and. (2) did these losses occur in plaintiff's trade or business?

[1-4] The determination of the first issue depends on whether the advances by Brinker were loans or capital investments. The objective intent of the parties, as determined from a study of all the relevant facts of the case, is decisive as to whether the advances were loans or capital contributions. Matthiessen v. C. I. R., 1951, 16 T.C. 781, affirmed 2 Cir., 194 F.2d 659. In studying the facts of the case, substance should be looked to rather than form. Schnitzer v. C. I. R., 1949, 13 T.C. 43, affirmed 9 Cir., 183 F.2d 70, certiorari denied 340 U.S. 911, 71 S.Ct. 291, 95 L.Ed. 658; Dobkin v. C. I. R., 1950, 15 T.C. 31, affirmed 2 Cir., 192 F.2d 392. Therefore, although plaintiff's advances were shown on the books of the corporations as loans, and were evidenced by promissory notes, these formalities are not controlling. Janeway v. C. I. R., 1943, 2 T.C. 197, affirmed 2 Cir., 147 F.2d 602; Dobkin v. C. I. R., supra. Rather, for tax purposes, these advances are to be considered as capital contributions since the initial capitalization of both these corporations was inadequate for the purpose for which they were organized. Hilbert L. Bair v. C. I. R., 1951, 16 T.C. 90; Matthiessen v. C. I. R., supra; Schnitzer v. C. I. R., supra; Dobkin v. C. I. R., supra.

The Caribou Company had undertaken an extremely ambitious program, which involved the construction of a $250,000 gold dredging machine, and the mining of an estimated $3,000,000 in gold. To accomplish this plan, the stockholders originally subscribed a mere $17,500 in cash. Brinker himself stated that he knew that when he contributed his $5,000 more funds would be needed to get operations started. Realistically approached, all the monies actually advanced constituted risk capital. There is no basis for distinguishing the original cash subscriptions from the amounts advanced shortly thereafter, in view of the fact that all of these funds were to serve the same purpose, namely, get the corporation under way. Schnitzer v. C. I. R., supra. Undoubtedly, too, the expected R. F. C. loan probably depended on a showing of sufficient working capital by the Caribou Company.

If the stockholders attempted to enforce payment of their notes it would have rendered the corporation insolvent. Further, when the R. F. C. loans were granted, the repayment of this obligation would necessarily take precedence over the stockholder's demands. These factors, in addition to the fact that there was no security given for the advances, negative plaintiff's insistence that loans were intended. The possibility is remote indeed, that anyone but an investor would have made these advances of funds to a corporation embarking on a venture of such a speculative nature. Matthiessen v. C. I. R., supra.

Brinker advanced $100,000 junior financing to the Brinker-Johnson Company in return for which he received a one-half interest in the net profits and an equal voice in the management. The money advanced was pursuant to the demand of the R. F. C. that sufficient working capital be provided to warrant the loan for the gold dredging machine. The nature of the agreement indicates an intent on Brinker's part to take all the risks associated with providing risk capital, especially since the original capitalization of Brinker-Johnson Company was $200. True, the corporation had received by assignment valuable mining rights, water rights, and claims, etc., from the Johnson Company. However, these fixed assets had little practical value unless there was adequate working capital supplied. Furthermore, the ad-

vances made were subordinate to the loan made by the R. F. C. Where an outside creditor is given complete priority over advances made it is practically an admission that the advances were considered capital advances. Watson v. C. I. R., 2 Cir., 1942, 124 F.2d 437. Since no security was given for the advance, a creditor would have found himself in the doubly disadvantageous position of having no security, and having his advancement subject to the repayment of $250,-000 to the R. F. C.

In the face of the actual facts, and a determination of the objective intent of the parties, the plaintiff has failed to carry the burden of establishing that his advances were bona fide loans rather than capital advances.

The second issue presented is whether plaintiff was actually in the gold mining business as well as the construction and farming business in which he admittedly engaged. The plaintiff's testimony indicates in certain terms that he did not consider himself in the mining business. Brinker testified that construction work and cattle ranching was his business, also that he was not in the business of promoting mining ventures or lending money. If Brinker were regularly engaged in lending money to business enterprises, bad debt losses resulting therefrom would be incurred in his business. C. I. R. v. Smith, 2 Cir., 1953, 203 F.2d 310. The same treatment would be afforded his losses if he were acting as a promoter of corporate enterprises. Omaha National Bank v. C. I. R., 8 Cir., 1950, 183 F.2d 899, 25 A.L.R.2d 628.

█ Where advances are made by the taxpayer to protect his prior investments, losses ensuing are not incurred in the trade or business of the taxpayer. C. I. R. v. Smith, supra; Omaha National Bank v. C. I. R., supra. Brinker himself testified that his reason for making the advances was to protect his original investment.

█ The operation of the mining project was the business of the two corporations formed to carry on the work.

It was not the plaintiff's individual business. His motive in making repeated advances to the enterprise was to protect his original investment, not because he was in the business of promoting mining ventures.

Therefore, in view of the above facts and testimony, even if this court had found that plaintiff's losses resulted from bona fide loans, the conclusion is that such losses were not incurred in plaintiff's trade or business. It is,

Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the defendant and against the plaintiff. Each party to pay its own cost.