E. A. FARISS and Janice Fariss, husband and wife, Plaintiffs,

v.

Earl R. WISEMAN, Director of Internal Revenue, District of Oklahoma, Defendant.

Civ. No. 6077.

United States District Court
W. D. Oklahoma.

Jan. 31, 1955.

T. K. Quillin, Oklahoma City, Okl., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Ethan B. Stroud, Sp. Assts. to the Atty. Gen., Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

CHANDLER, District Judge.

This action is for the recovery of deficiency taxes paid for the tax year 1950 as a result of disallowance by the Collector of Internal Revenue, District of Oklahoma, of a deduction claimed by the taxpayers as a business bad debt, a loan to one Ned Garner of Beverly Hills, California, evidenced by seventeen notes totaling the principal sum of $10,000 and bearing interest at six per cent per annum. All of the notes were unsecured. Payment of the last note due was due in November of 1950. The case was tried to the Court April 21, 1954 and submitted on briefs.

Two questions are involved. 'The first is: Was the loss incurred in the conduct of a trade or business within the meaning of Title 26 U.S.C.A. § 23(e) (1)? The second inquiry is: Was the debt evidenced by the aggregation of these notes actually worthless in the year 1950?

Ned Garner is the son of a widow whose husband had been a close personal friend of Fariss. Fariss, at the time the loan was made, and also later when he (Fariss) decided the debt represented by the loan was worthless, was a practicing attorney in Oklahoma City, Oklahoma, and was also engaged in oil production, ranching, and the real estate, rental and loan business.

Mr. Fariss testified that he made the loan to Garner on Garner's representation that it would be used in the purchase of gold which was to be used by Garner in his jewelry manufacturing business in Beverly Hills. Mr. Fariss also testified that he had seen Garner's work and knew his reputation as a manufacturing jeweler, and had confidence that Garner could successfully and profitably operate his business as a manufacturing jeweler. Fariss' uncontradicted testimony was that in lieu of security for the Garner loan he was to receive, in addition to principal and interest, a share of the profit from the sale of jewelry items made from the gold purchased with the proceeds of the loan. Mr. Fariss further testified that for some twenty years he had, in addition to his other enterprises, engaged in the business of making loans, some of which were secured

and unspeculative, and many others, like the loan he made here, which were unsecured and speculative. Fariss' testimony was corroborated from the stand by Mr. Felix Simmons, now of Ardmore, Oklahoma, who formerly was vice-president of the Liberty National Bank of Oklahoma City. Mr. Simmons stated it is not uncommon for men in the business of loaning money to make unsecured speculative loans such as was made here and to agree to accept a share of profits in lieu of security.

Sometime in 1950 Fariss learned that the money loaned had not been used to purchase the gold; that Garner had had domestic difficulties resulting in divorce, and some of the money, at least, had been used to pay alimony. Prior to learning of these circumstances he had made repeated requests for payment and, for the first time, in 1950 he had a Mr. Klien in California investigate Garner's circumstances and report to him on the possibility of collecting the debt. The report was unfavorable.

Throughout 1950 Fariss continued to make requests for payment. In December 1950 he received a letter from Garner in which Garner requested an additional loan of $5,000, and stated if Fariss loaned him the additional money he would be able to sell his business and pay all creditors including Fariss, and that if he did not get the money he would be ruined. Fariss did not loan Garner the additional money and when filing his 1950 return, not having received any payment on any of the notes the first of which was due in July of 1949, deducted the amount of these notes as a business bad debt under Sec. 23(e) (1), (k) (1) of the Internal Revenue Code, Title 26 U.S.C.A. It did appear from the testimony that subsequent to the year 1950 Garner remained, and still remains, in business, and that during 1951 and 1952 Garner mailed several checks to Fariss in payment of the loan, all of which checks turned out to be bad, so that up to the date of trial, at least, Fariss still had not received even a partial repayment of the loan. There was also testimony that at the request of the Government for proof of the worthlessness of the debt in 1950, Mr. Fariss engaged a Mr. McFarland in California who also reported, as had Mr. Klien in 1950, that it would be useless to try to collect the debt or to bring suit as it was his opinion the debt was worthless. It does *not* appear that McFarland reported that Garner was bankrupt or insolvent *at the close of the calendar year 1950* and to date *no evidence* of any kind has been produced which would prove Garner's absolute inability to pay during 1950, the year it was claimed the debt became worthless.

■ The burden is upon the taxpayer as to deductions for both losses and bad debts, or other exemptions or deductions from federal income tax, to prove that he comes squarely within statutory provisions authorizing the claimed deductions or exemptions. Miller Manufacturing Co. v. Commissioner, 4 Cir., 149 F.2d 421; Mahler v. Commissioner, 2 Cir., 119 F.2d 869, certiorari denied 314 U.S. 660, 62 S.Ct. 114, 86 L.Ed. 529.

■ As to losses—and this Court finds no indication that the law is otherwise as to debts—it is incumbent upon the taxpayer to definitely establish by some identifiable event or series of circumstances that the loss was sustained or the property became worthless during the taxable year in question. A. R. Jones Oil & Operating Co. v. Commissioner, 10 Cir., 114 F.2d 642; Brown v. Commissioner, 6 Cir., 94 F.2d 101; Gowen v. Commissioner, 6 Cir., 65 F.2d 923, certiorari denied 290 U.S. 687, 54 S.Ct. 123, 78 L.Ed. 592.

■ The mere fact that the taxpayer has not shown a positive exhaustive effort to collect a debt through judgment and execution does not preclude him from establishing the worthlessness of a debt if he can show circumstances apart from such effort which will establish the worthlessness of the debt as of the close of the taxable year in question. Smyth v. Barneson, 9 Cir., 181 F.2d 143.

If, during the trial, Fariss had presented concrete evidence of the inability of Garner to pay this debt from the proceeds of the sale of his business, or otherwise, he would satisfactorily have carried his burden and would not have been required to do some futile act directed toward collection or to have sued the debtor if the debtor was judgment proof. The evidence—and no new evidence was presented in plaintiffs' brief—did not establish that this debt was worthless during the tax year 1950. And, on the contrary, the fact of the continuation of Garner's business to date, and the issuance of several bad checks by Garner to Fariss during 1951 and 1952 were circumstances tending, at least, to show that though Fariss had claimed the debt as worthless in 1950 he continued to hold some hope of its collectibility. There is no doubt that at the end of the year 1950 and in 1951 when Fariss filed his tax return he *considered* the debt to be worthless. This attitude is not inconsistent with holding out a bare hope that he *might* collect the debt. And the fact that he later got the opinion of a California private investigator that the debt was worthless in analogous to the situation where an attorney thought a debt was worthless and the court held such fact insufficient to establish worthlessness of the debt. Appeal of Carl Muller, 4 B.T.A. 169.

In spite of the fact that Fariss and two California residents from whom he sought and obtained information and advice with regard to Garner's financial condition considered Garner's debt to Fariss uncollectible the evidence is insufficient to enable this court to find as a fact that the debt was uncollectible and, therefore, worthless in the year 1950. Having thus concluded Fariss' failure to prove the worthlessness of the debt in 1950, it becomes unnecessary to decide whether it was a business or non-business debt.

Judgment is, accordingly, entered for defendant and for defendant's costs in this action.