**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

**v.**

**George J. SCHAEFER, Respondent.**

**No. 25, Docket 24043.**

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1956.

Decided Jan. 10, 1957.

382

Joseph F. Goetten, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

Philip Zimet, New York, N. Y. (Olvany, Eisner & Donnelly, Robert F. Welch and Alfred L. Scanlan, New York City, on the brief), for respondent.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

The Commissioner seeks review of a Tax Court determination rejecting in part an asserted deficiency in the taxpayer's federal income tax for 1948.

The Tax Court made extensive findings which are reported at length at 24 T.C. 638. The following résumé will, we think, suffice for an understanding of the problem involved.

The taxpayer since 1914 has been connected with the motion picture industry as a corporate executive and more recently on his own account as a supervisor of film-distribution employed by independent producers. In 1946, he organized a corporation known as Romay Pictures, Inc. (Romay), for the purpose of producing a particular Photoplay, "The Return of Rin-Tin-Tin," the production of which was estimated to cost $175,000. The original capital of the corporation was $14,000 all of which was paid in by the taxpayer who became its president, dominating executive and, for the time being, its sole stockholder. He obtained from two lending institutions a primary and a secondary loan to Romay in the respective amounts of $105,000 and $65,000, on conditions which he duly fulfilled, viz.: that he should pay Romay $11,000 either as a loan or as a capital contribution (which would bring its total paid-in capital up to $25,000); should execute a personal guaranty to complete the Photoplay in the event the funds otherwise available for its production should prove to be insufficient; and that as a bonus to the lender of the secondary loan, he should donate Romay capital stock of a par value of $4200. Other personal commitments were specified and fulfilled. For the additional $11,000 [1] paid to Romay and for the $53,273.65, which he later advanced to complete the Photoplay, the taxpayer received from Romay notes providing for interest at 6 per cent per annum, which in accordance with the underlying agreements he subordinated to the primary loan. The taxpayer had never before engaged in the business of producing or financing the production of a feature picture.

In his 1948 tax return the taxpayer claimed a deduction, as a "Business Loss," of the $53,273.65 advanced to Romay. The Commissioner disallowed the deduction and reflected the disallowance in an asserted deficiency. The Tax Court held that the advance of $53,273.65 by the taxpayer to Romay for the completion of the Photoplay gave rise to a debt which became worthless in 1948, and that it was a business debt wholly deductible under Section 23(k) (1) of the 1939 Code, 26 U.S.C.A. § 23(k) (1).

The sole question pressed on this review was whether the debt was a business debt, within the meaning of Section 23(k) (1) of the Code of 1939, or a nonbusiness debt under Section 23(k) (4).

We sustain the Commissioner's position and hold that the $53,273.65 advanced to complete the Photoplay constituted a "non-business" debt under Section 23(k)

---

1. Before the Tax Court, the taxpayer contended that this $11,000 payment was a business debt under Section 23(k) (1)

of the 1939 Code. The Tax Court decided otherwise and from that decision the taxpayer has not sought review.

(4) and not one "the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

As provided in Treasury Regulations 111, Sec. 29.23(k) (6), a business debt is one the loss of which through worthlessness is proximately related to a trade or business in which the taxpayer is then engaged. Hickerson v. Commissioner, 2 Cir., 229 F.2d 631, 633. We find no evidence at all to bring this debt, or its loss, into proximate relationship with any business of the taxpayer.

As the Tax Court found, the taxpayer "had never * * * been engaged in the business of financing corporations through personal advances or loans, as in Vincent C. Campbell, 11 T.C. 510." To be sure, the advances were made to enable the completion of the Photoplay: they were thus directly and proximately related to Romay's trade and business. But that is not to say that they were related to the taxpayer's business. Merely because Romay was the creature of the taxpayer, having been brought into existence to produce the Photoplay, and was under his complete and sole control, it does not follow that Romay's business was the taxpayer's business. As the Tax Court said: "In contemplation of law, a corporation is an entity separate and apart from its stockholders, and where an individual * * * seeks the benefits of the corporate form or method for the ownership and conduct of a business, he * * * may not ignore the presence or existence of the corporation, in order to avoid the disadvantages." See Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L. Ed. 397; Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389. It follows that having created Romay to produce the Photoplay the taxpayer may not, when it comes to determining his tax obligations, have the production or financing of the Photoplay treated as his personal business.

We also agree with the Tax Court that the record does not support a conclusion, which the taxpayer still persists in urging, that this particular venture was any part of a business in which the taxpayer had been engaged. It is true that the taxpayer both as a corporate executive and on his own account had been engaged in various activities in the motion picture field. But so far as the record shows, this was the first and only instance in which the taxpayer had produced, or financed the production of, a feature picture and a debt in connection with this venture had no relationship with the taxpayer's other business.

We further agree with the Tax Court that his claim must stand or fall upon the effect of his participation in his individual capacity in the venture which had to do with and resulted in the production of the Photoplay.

But we think the Tax Court erred in holding that the individual obligations which the taxpayer voluntarily assumed to the two lending institutions, or what was done by him to discharge those obligations, amounted to a "trade or business" within the meaning of Section 23 (k). In reaching its conclusion the Tax Court seemed to think it significant that the taxpayer, instead of reserving to himself the decision as to whether he would provide additional financing for the enterprise, obligated himself to the two lending institutions, as an inducement to the loans sought of them, "at his own cost and expense" to "cause the Picture to be fully completed." To us this distinction seems not to be meaningful. If, when Romay was in need of further cash, taxpayer, without prior commitment, had given it a direct loan or had endorsed its note to a bank for the $53,000 needed to complete the Photoplay, it is established that for purposes of Section 23(k) neither the loan nor the endorsement and subsequent payment of the note after default would have constituted a "trade or business" belonging to the taxpayer, and the debt incurred would not have been a business debt. Burnet v. Clark, supra; Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310, certiorari denied 346 U.S. 816, 74 S.Ct. 27, 98 L. Ed. 1073; Hickerson v. Commissioner, supra; Brinker v. United States, D.C.,

116 F.Supp. 294, affirmed, 9 Cir., 221 F.2d 478. Cf. Dalton v. Bowers, supra.

We fail to see how the tax consequences can be different in the situation here merely because the taxpayer's obligation was evidenced by a nonnegotiable written agreement guaranteeing completion at his sole expense instead of by the endorsement of a negotiable note for a specific sum. 63 Yale L.J. 862, 871. As was said in Putnam v. Commissioner of Internal Revenue, 77 S.Ct. 175, 180:

> "There is no real or economic difference between the loss of an investment made in the form of a direct loan to a corporation and one made indirectly in the form of a guaranteed bank loan. The tax consequences should in all reason be the same, and are accomplished by § 23 (k) (4)."

And here the taxpayer's agreement that his claim against Romay for the expense of completion should be subordinated to the loan of the primary lender is a factor which somewhat tends further to identify the advances for completion expense as a capital investment rather than a business expense of the taxpayer.

In an effort to sustain the decision under review, the contention is made that the taxpayer was in the business of furnishing services to Romay and that the $53,000 advanced to Romay was an incident of that business. For this thesis the taxpayer relies principally on Folker v. Johnson, 2 Cir., 230 F.2d 906, 909, and First National Bank of Lansdale v. Smith, D.C.E.D.Pa., 141 F.Supp. 722. But in Folker v. Johnson, this court held only that for purposes of 26 U.S.C.A. (I.R.C.1939) § 122(d), a full-time, salaried corporate officer was engaged in "the trade or business of rendering services for pay." Plainly, it is not applicable to the facts of this case in which the taxpayer served as corporate president without pay. And in the Lansdale case, the facts supported a finding that the taxpayer was a joint venturer with a corporation in which he was a small stockholder.

Here no joint venture was found or, under the subordinate facts, could be found.

Reversed and remanded for modification to conform to the foregoing opinion.