**Bettie L. POE, individually and as Administratrix of the Estate of Rollin Poe, Deceased, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 6220.**

United States District Court
D. Colorado.
May 16, 1961.

**94**

Stanley L. Drexler, Denver, Colo., for plaintiffs.

Burton A. Schwalb, Tax Div., Dept. of Justice, Washington, D. C., and Vernon Ketring, Asst. U. S. Atty., Denver, Colo., for defendant.

KERR, District Judge (assigned).

Plaintiffs seek to recover the sum of $3,173.04, plus interest, as a refund of income taxes for the calendar year 1953. They allege that the United States of America illegally and erroneously collected such sum and that they should be allowed a casualty loss deduction under Section 23(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(e). Whether or not there was an overpayment of income taxes in their 1953 return depends upon whether the taxpayers sustained a loss in that year, their home and property having been damaged by the flood on June 19, 1947.

The essential facts are not in dispute. Plaintiffs purchased the residence in September 1946 for $12,000 and obtained an $8,000 G. I. loan from the First Federal Savings and Loan Association of Pueblo, Colorado, hereinafter referred to as First Federal. Under the terms of the Deed of Trust plaintiffs were required to keep the buildings on the premises insured against loss by flood and other casualties. They thought that First Federal had obtained the necessary policy, whereas a memorandum of the policy, merely, had been sent to them inquiring what coverage they desired. They did not reply to this inquiry. Consequently, they were not covered by flood insurance at the time of the flood. First Federal at all times denied any liability to plaintiffs. After the flood plaintiffs and First Federal conferred frequently, and unsuccessfully, attempting to reach an amicable settlement. Plaintiffs, however, defaulted in the monthly payments due on their loan and on November 4, 1947 First Federal commenced foreclosure proceedings. On November 30, 1947, when the foreclosure sale was imminent, plaintiffs sent a telegram to First Federal stating that they would rehabilitate the property at their own expense. At their request First Federal stopped the foreclosure proceedings and extended the loan.

In accordance with their agreement plaintiffs rehabilitated the property and expended about $3,400 between December 18, 1947 and July 17, 1950. On June 16, 1950, however, they filed suit against First Federal in the District Court of Pueblo County, Colorado, for $12,000 damages allegedly resulting from its failure to secure the flood insurance on their property. The jury's verdict in favor of plaintiffs in the sum of $9,333.33 was reversed in 1953 by the Supreme Court of Colorado. It held that plaintiffs were estopped from maintaining their action due to the telegram which they sent on November 30, 1947, in reliance upon which First Federal stopped the foreclosure proceedings, extended the loan contract and reduced the monthly payments. Chamberlain, et al. v. Poe, et al., 127 Colo. 215, 256 P.2d 229.

In his 1947 income tax return the deceased, Rollin Poe, claimed and was al-

lowed a flood loss deduction of $5,600 for damages to the furniture and personal effects, and of $3,500 for loss to residence and grounds. No amendment of this 1947 return was ever filed. Neither was any flood loss deduction claimed in plaintiffs' 1953 income tax return. In September 1956 plaintiffs filed a claim for refund of their 1953 taxes on the ground that their flood loss was not determined until the decision of the Colorado Supreme Court in 1953. That claim was disallowed and this proceeding followed.

Defendant contends that the loss occurred in 1947, the year of the flood, and that 1947 was the proper year in which to deduct any and all loss caused thereby. It is the theory of plaintiffs that the loss deduction in the 1947 return represented damages over and above any insurance or right of recoupment they might have had, or, in the alternative, that it was simply an error and without legal effect.

■ The physical loss having occurred in 1947, the crux of this controversy is whether the taxpayers sustained their burden of proving facts which would allow them to postpone the loss deduction until 1953. Interstate Transit Lines v. Commissioner of Internal Revenue, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Callan v. Westover, 116 F.Supp. 191, affirmed Riddell v. Callan, 9 Cir., 235 F.2d 190. There is no dispute over the principles of law applicable to this case. The conflict arises in their application to the specific facts of this particular claim. See Lucas v. American Code Company, Inc., 1930, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538; A. R. Jones Oil and Operating Co. v. Commissioner of Internal Revenue, 10 Cir., 114 F.2d 642. The problem must be approached from a practical, realistic and objective viewpoint. Denver and Rio Grand Western Railroad Company v. Commissioner of Internal Revenue, 10 Cir., 279 F.2d 368; Commissioner of Internal Revenue v. Highway Trailer Co., 7 Cir., 72 F.2d 913.

■ On November 30, 1947, the taxpayers gave up all hope of recovery from the First Federal. They decided at that time that the only way to save their property was to resolve their controversy with First Federal. Their prospects to recover were not even nebulous or problematical, when, on November 30, 1947, they agreed to rehabilitate their property at their own expense, to pay up their arrearages, and to negotiate anew with the First Federal. That act constituted the closed and completed event which identified 1947 as the year when the loss was sustained.

As sympathetic as one is with the tragedy of a loss to one's home, it is evident that the taxpayers did not sustain their burden to prove that they were entitled to postpone their loss deduction until 1953. The rebirth in 1950 of any reasonable prospect of recovery was ineffective to postpone their loss deduction until the final adjudication of a belated suit against First Federal. The record is devoid of any evidence that the taxpayers reasonably and continuously expected to recover from First Federal from June and November 1947, through June of 1950, and until April of 1953. See United States v. S. S. White Dental Manufacturing Company, 1927, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Estate of Scofield, et al. v. Commissioner of Internal Revenue, 6 Cir., 266 F.2d 154; Shoenberg v. Commissioner of Internal Revenue, 8 Cir., 77 F.2d 446; First National Bank of Lansdale v. Smith, D.C. Pa., 141 F.Supp. 722; Fariss v. Wiseman, D.C.Okl., 131 F.Supp. 644.

In view of my determination that plaintiffs suffered their deductible loss in 1947 only, that their deduction was properly taken in 1947, and that they did not make an overpayment of income taxes in 1953, it is unnecessary to pass on the value of their property loss and the possibility of adjustment and correction of tax returns.

From what I have said I hold that the plaintiffs have failed to sustain by a preponderance of the evidence the material allegations of their complaint.

The facts herein stated and the conclusions of law herein expressed shall be considered the Findings of Fact and Conclusions of Law and judgment will be entered accordingly.