Robert T. **RENDLEN** and Caroline H. Rendlen, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. 58 C 280(2).

United States District Court
E. D. Missouri, E. D.

Oct. 1, 1959.

Donald F. Flint, Clayton, Mo., for plaintiffs.

Robert Livingston, Washington, D. C., Harry Richards, U. S. Atty., St. Louis, Mo., for defendant.

HARPER, District Judge.

The plaintiffs are seeking a business bad debt deduction for alleged losses incurred in the year 1956. Caroline H. Rendlen is a party only because she and her husband, Robert T. Rendlen, filed joint income tax returns. For convenience and clarity, Robert T. Rendlen is hereinafter referred to as taxpayer. Jurisdiction is conferred on this court under Section 1346(a) (1) of Title 28 of the United States Code.

Taxpayer was the owner of about 25% of the stock of the Rendlen Motor Company, although he testified that he owned 100% of the stock during part of 1954 when an attempt was made to secure a Chevrolet contract. The principal business of the Rendlen Motor Company was the sale of new cars at retail. Taxpayer was also a stockholder in the Midwest Finance Company, Midland Milk Products Company, and Tops Motor Sales. The foregoing corporations, excepting the milk company, are no longer conducting any business. Taxpayer's father, who was the majority shareholder in Rendlen Motor Company, died in January, 1954. Taxpayer testified that during 1954, 1955 and 1956, he was the general manager and in charge of all operations of the Rendlen Motor Company, though his activities concerning the motor company were extremely limited in 1956 because he had left Hannibal, Missouri, and most of his time was occupied in 1956 as a design engineer for various companies.

On or about September 2, 1955, Rendlen Motor Company, through taxpayer, entered into a "Floor Plan" agreement with the Illinois State Bank of Quincy whereby the bank agreed to finance the wholesale purchase of automobiles by the motor company. Also on September 2, 1955, taxpayer in his individual ca-

pacity executed his guarantee that loans made to the company by the bank under the "floor plan" would be paid. Later, the assets of the Rendlen Motor Company became insufficient to satisfy an indebtedness to the bank for loans made pursuant to the "floor plan" agreement, and the bank demanded payment, threatening legal action.

Thereafter, the following series of transactions resulted in the payment by the motor company of $30,575.57 to the bank: By mutual agreement, the estate of taxpayer's father borrowed the above sum from the Midland Milk Products Company, giving a note bearing 2½% interest per annum; taxpayer borrowed the amount from the estate giving a similar note; and Rendlen Motors borrowed the amount from taxpayer giving him a similar note. The "Agreement" recited the indebtedness of Rendlen Motors to the bank and that the loan transactions were in effect one transaction " * * * to protect the joint and several interests of the Rendlen Motor Company, a corporation, and Robert T. Rendlen personally." The "Agreement" was signed by taxpayer for himself, Rendlen Motor Company, and the estate of his father, of which he was a co-executor. Raymond G. Rendlen, Jr., taxpayer's brother, signed for Midland Milk Products Company, and also as co-executor of the estate. The money advanced was used to pay the bank the amount owed.

■ If taxpayer is to have a bad debt reduction, it must be under Section 166, I.R.C.1954, 26 U.S.C.A. § 166, which relates to bad debts, and not Section 165, 26 U.S.C.A. § 165, which relates to losses generally. Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144.

The issue before the court is whether the taxpayer acquired in connection with his trade or business, as provided by Section 166(d) (2), I.R.C.1954, the debt of ,$26,709.54, and if so, whether such debt became worthless within the taxable

year 1956 as required by Section 166(a) (1), I.R.C.1954.

The pertinent parts of Section 166, I.R.C.1954, provide as follows:

"§ 166.  Bad debts

"(a)  *General rule.*—

"(1) *Wholly worthless debts.*— There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * *

"(d) *Nonbusiness debts.*—

"(1) *General rule.*—In the case of a taxpayer other than a corporation—

"(a) subsections (a) and (c) shall not apply to any nonbusiness debt; and

"(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.

"(2) *Nonbusiness debt defined.*— For purposes of paragraph (1), the term 'nonbusiness debt' means a debt other than—

"(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

"(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

The motor company set off a trade account owed by the taxpayer and $26,709.-54 is, by stipulation, the amount the motor company has not repaid to taxpayer.

The taxpayer urges that he was engaged in the trade or business of either (1) "investment in and operation of various enterprises", or (2) "in the operation of Rendlen Motor Company specifically." The first contention was not pressed.

The leading case dealing with this problem is Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397. There, the taxpayer had been a majority stock-

holder, active head, and president of a dredging company. He devoted himself largely to the corporation affairs. He also owned an interest in several other corporations. When the corporation encountered financial difficulties, he endorsed the company's obligations to banks, and eventually had to pay $68,000 for the dredging company on account of his endorsements. The Board of Tax Appeals, approving the Commissioner's ruling that the loss was not deductible from gains in succeeding years, held that the losses did not result from the operation of any trade or business regularly carried on by the taxpayer. The District Court of Appeals (59 F.2d 1031) reversed, pointing out that the taxpayer was the principal owner and active directing head of the corporation. In the opinion of the District Court of Appeals the court stated:

"Appellant accordingly was necessarily concerned with the financial conditions and difficulties which beset the business, and he was compelled by circumstances to indorse the company's notes in order to supply it with necessary operating funds. This action was not isolated or occasional, but became part of the operation of the business, and helped to carry it on. It is true that appellant did not regularly carry on a business of indorsing notes for profit, but his indorsement of the company's notes was part of the business regularly carried on for the company * *." Loc. cit. 1032.

The taxpayer here contends there are two circumstances present in this case which are controlling, to wit: (1) He was directly and actively engaged as an employee-manager of the corporation, and (2) he gave his personal guarantee as a direct incident of such employment. The similarity of these contentions to those urged and accepted in the District Court of Appeals in the Burnet case, are easily seen. The Supreme Court rejected the views of the District Court of Appeals and agreed with the Board of Tax Appeals that the losses were not incurred in a trade or business regularly carried on by the taxpayer. The court stated:

"The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own * * *. He treated it as a separate entity for taxation; made his own personal return; and claimed losses through dealings with it. He was not regularly engaged in indorsing notes * * *. The unfortunate indorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares." 287 U.S. loc. cit. 415, 53 S.Ct. loc. cit. 208.

Taxpayer urges, and the facts indicate, that the "loan" made to Rendlen Motor Company was in reality a payment by him in satisfaction of his guarantee to the bank. The case of Putnam v. Commissioner, supra, affirming the Eighth Circuit Court of Appeals (224 F.2d 947), indicates that the tax consequences where there is a loss of an investment should be no different because there is a guaranteed loan instead of a direct loan transaction. In Commissioner v. Smith, 2 Cir., 203 F.2d 310, certiorari denied 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343, the owner of 20% of the stock in a farm corporation was also the treasurer and general manager of the corporation. His duties included such matters as supervising personnel, purchasing, planning and harvesting. Over a period of 8 years he loaned the corporation over $38,000 which became a worthless debt which the taxpayer sought to deduct as having been incurred in his trade or business. The court recognized that Congress had never defined "trade or business", but concluded:

"The full-time management of one's investments does not constitute a trade or business. * * * Nor does serving as an officer of a corporation of which the taxpayer is a stockholder and creditor." 203 F.2d loc. cit. 312.

The Smith case, supra, was criticized in Folker v. Johnson, 2 Cir., 230 F.2d 906–909, insofar as it held that serving as an officer of a corporation of which a taxpayer is a stockholder or creditor cannot constitute a trade or business. Later, in Commissioner v. Schaefer, 2 Cir., 240 F.2d 381, the court cited the Smith case, supra, in holding that a loss of over $53,000 advanced to a corporation by its president and dominating executive was not a business bad debt. In the Schaefer case, two lending institutions loaned money to the corporation for the production of a photoplay. The taxpayer agreed with the lending institutions that he would furnish any additional funds that might be necessary to complete the project. The $53,000 outlay was made by taxpayer on that guarantee. It was held to be a non-business bad debt. See also Holtz v. Commissioner, 9 Cir., 256 F.2d 865.

The language in the Smith case, supra, would seem to completely exclude the possibility that a stockholder could work for the corporation at a trade or business, but under the facts in this case, even if taxpayer's activities constituted a trade or business, the amount in question cannot be allowed as a business bad debt.

█ The taxpayer in the case at bar urges that his guarantee was incident to his position as an employee and president of the company. The burden of proof is on the taxpayer to show he is entitled to the claimed deduction under the applicable statute. Meyer v. Commissioner, 8 Cir., 243 F.2d 262–264.

Van Pelt v. Commissioner, 9 T.C.M. 675 (C.C.H. Dec. 17, 803), decided in 1950, is relied on heavily by the taxpayer. There, Van Pelt loaned various amounts to a corporation during the years 1938 through 1944. He held about 25% of the stock of the corporation and was its president and general manager during part of that time. In 1945 it was determined that he would not recover over $20,060.30 that he had advanced to the corporation and he claimed a deduction for that amount. While the Tax Court did determine that he was engaged in the business of manager of the corporation, they held the loss was not proximately connected, within the meaning of the statute and regulations, to the business of managing the corporation. The court stated as follows:

"The facts do not disclose that petitioner was in the business of loaning money to corporations. And, in addition it has not been shown that when petitioner assumed the duties of manager of Navigation one of his duties was to advance his personal funds for its salvation." Loc. cit. 680.

The taxpayer here has not shown any agreement with his employer that, incidental to his duties as manager or president, he would risk large sums of money through guarantees. He has not shown any such agreement ever existed, and more particularly, he has not shown that on September 2, 1955, at which time Rendlen Motor Company had been suffering "severe" losses, it was one of his duties as an employee of the corporation (whose business was selling automobiles at retail) to execute his personal guarantee that loans would be repaid.

█ The taxpayer's action in subordinating his "loan" to the other debts of the corporation, and the relinquishment of security which the principal creditor had, are not material to the decision in this case. From the facts before the court, it is the court's opinion that (1) the taxpayer's activities did not constitute a "trade or business" of investing in and operation of various corporate enterprises, nor did his activities with Rendlen Motor Company constitute a "trade or business" within the meaning of the statute (Burnet v. Clark, supra, and Commissioner v. Smith, supra); (2) assuming that taxpayer's activities concerning Rendlen Motor Company did constitute a "trade or business", the facts do not show the guarantees and resulting loss were proximately connected to such trade or business; and (3) the loss the taxpayer incurred was the result of

a nonbusiness debt and, therefore, subject to the limitations of Section 166(d)(1)(B), I.R.C.1954.

Judgment will accordingly be for the defendant. Attorneys for the defendant will prepare the findings of fact, conclusions of law and judgment to be entered, and submit same to the court for entry.