Frank H. Niehaus and Margaret Niehaus v. Commissioner.
Niehaus v. Commissioner
Docket No. 74622.
United States Tax Court
T.C. Memo 1960-42; 1960 Tax Ct. Memo LEXIS 247; 19 T.C.M. (CCH) 217; T.C.M. (RIA) 60042; March 18, 1960
*247 Held, where petitioners made loans evidence by notes to a corporation in which one petitioner was an officer and major shareholder, under the facts of the case, the unpaid balance of the loans was a nonbusiness bad debt within the meaning of section 166(d) of the I.R.C. of 1954 rather than a business bad debt under section 166(a) or a loss under section 165(c). Francis C. Flynn, Esq., 319 North 4th Street, St. Louis, Mo., for the petitioners. Claude R. Sanders, Esq., and James H. Martin, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined income tax deficiencies for the years 1954 and 1955 in the respective amounts of $1,092.80 and $950.70. In their petition, petitioners assign as error the inclusion of the amount of $9,398.05 due and owing from a corporation as a short-term capital loss in the year 1954 rather than including the sum as a business bad debt to be deducted in the year 1955. On brief, petitioners contend in the alternative that if the debt is not a business bad debt, it is a "loss" under section 165(c) of the Internal Revenue Code of 1954. At the trial no testimony was presented and the facts were all submitted in a written stipulation which is incorporated herein by this reference. So far as pertinent to the questions involved they are substantially as follows: Petitioners, Frank H. and Margaret Niehaus, are husband and wife, who reside in Saint Louis *249 County, Missouri. Petitioners filed the returns for the years here involved with the district director of internal revenue, St. Louis, Missouri. Margaret Niehaus, during the years in question, was a director and vice-president of the Roberts Distributing Co., Inc., hereinafter sometimes called the corporation, a Missouri corporation created on July 6, 1950, which was engaged in the business of selling television sets and radios. She owned all the issued preferred stock which had a par value of $25,000. She also owned 50 of 100 issued shares of common stock, par value of $1 per share. Petitioners made loans to the corporation totalling $15,000. These loans were evidenced by notes of the borrower corporation under the following dates and amounts: Date
Amount
August 7, 1950
$5,000
September 7, 1950
5,000
January 26, 1951
5,000
Each note was payable in 30 days from date, and each bore interest at 6 per cent per annum. Payments on these notes were made as follows: Date
Amount
December, 1950
$ 500.00
January, 1953
2,500.00
March, 1953
500.00
April, 1953
500.00
May, 1953
500.00
September, 1953
500.00
November, 1953
250.00
September, 1954
351.95
$5,601.95
*250 The amount of these payments left an unpaid balance of principal on the two later notes of $9,398.05. The Roberts Distributing Co., Inc., went out of business during 1954, and its assets were insufficient to pay its obligations. The corporation's charter was forfeited by the State of Missouri on January 1, 1955, for failure to file an Annual Registration Report and Anti-Trust Affidavit for the year 1954. In their return for the year 1955, petitioners deducted as bad debts the unpaid balance of the notes, in the total amount of $9,398.05. Section 166(a)[1] allows deductions for business bad debts. Section 166(d) allows deductions in certain instances of nonbusiness bad debts. A nonbusiness bad debt, i.e., a loss not incurred in the taxpayer's "trade or business," is subject to the limitations applicable to short-term capital losses. The deficiency in this case is predicated in part on the Commissioner's determination that the debt had not been incurred in petitioners' trade or business and was therefore subject to the limitations applicable to nonbusiness debts. One test as to which subsection shall *251 apply is whether the petitioners were engaged in a trade or business to which the debt in question was proximately related. The question is essentially one of fact in respect of which the petitioners have the burden of proof. Rendlen v. United States, 178 F. Supp. 367 (E.D. Mo.). The record before us discloses in this respect only that petitioner Margaret Niehaus was an officer and a major shareholder in the Roberts Distributing Co., Inc. Although her husband, Frank H. Niehaus, apparently participated in making part of the loans, the record is devoid of facts concerning his relationship to the corporation. Based upon these scant facts, petitioners, on brief, argue that Margaret was in the business of distributing television sets and radios. This, however, overlooks the rule laid down by the Supreme Court that the business of the corporation may not be treated as the individual's business. Furthermore, it does not appear from the record that petitioners were engaged in the business of organizing or financing corporations, nor were they engaged in the business of lending money. The loans made by petitioners to the corporation were not proved to be proximately related *252 to their "trade or business." See Thomas Reed Vreeland, 31 T.C. 78; Towers v. Commissioner, 247 F.2d 233 (C.A. 2); Pokress v. Commissioner, 234 F. 2d 146 (C.A. 5). We need not comment on the cases cited by petitioners in their brief other than to say that the facts of those cases clearly distinguish the cases from the situation at hand. Petitioners have not sustained their burden of proving that the bad debts, arising from the nonpayment of the notes, are business bad debts within the meaning of section 166(a). Aubrey S. Nash, 31 T.C. 569; Hadwen C. Fuller, 21 T.C. 407; Charles G. Berwind, 20 T.C. 808, affd. 211 F. 2d 575 (C.A. 3); Jan G. J. Boissevain, 17 T.C. 325, Dalton v. Bowers, 287 U.S. 404; Burnet v. Clark, 287 U.S. 410; Rendlen v. United States, supra. Petitioners, on brief, contend in the alternative that the unpaid balance of the loans was a loss under section 165(c). A "loss" in the generic sense cannot be both a "bad debt" under section 166(a) or section 166(d) and a "loss" under section 165(c), for the reason that the two *253 sections are mutually exclusive. However, petitioners are not precluded from arguing both theories in the hope of showing that one or the other is applicable to the facts of their case. Lidgerwood Manufacturing Co., 22 T.C. 1152, affd. 229 F. 2d 241 (C.A. 2). Although it is not clear from the petitioners' argument, presumably the profits were to arise from the interest payments to be made on the notes. The record itself is devoid of any facts which would indicate the purpose of the loans. The record also fails to disclose that any interest was, in fact, paid to petitioners. It appears from the petitioners' computation of their alleged "loss" that they did not compute the interest due, by reason of the 6 per cent per annum provision in the notes, as part of the unpaid balance owing them. Nor were any of the payments actually made on the loans segregated as to which part was interest and which part was principal. Again, petitioners have not sustained their burden. The record is virtually barren of facts with respect to this issue. Whether petitioners made these loans to keep the corporation in business by providing additional working capital for day-to-day *254 operations or for any other business purpose does not appear. We cannot assume that the loans were made as part of a venture entered into for profit and that a loss under section 165(c) was incurred. The final question is whether this nonbusiness bad debt, found above, is allowable in the year 1955, as petitioners contend, or in the year 1954, as respondent held. Petitioners did not argue this issue in their brief. In fact, they state in the last paragraph of the brief that "the Petitioners do not take strong issue with the Commissioner's determination that the proper year is 1954." Similar candor is exhibited in the petition. Without further elaboration we hold that the Commissioner correctly held the year of 1954 to be the year of the loss. Decision will be entered for the respondent. Footnotes
1. All sections are in reference to the Internal Revenue Code of 1954.↩