**S. D. FERGUSON, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7558.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 20, 1958.

Decided March 6, 1958.

Fortescue W. Hopkins and Arthur E. Smith, Roanoke, Va. (William N. Pierce, and Hopkins & Pierce, Roanoke, Va., on brief), for petitioner.

George F. Lynch, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This is an appeal from a decision of the Tax Court, 28 T.C. 432, in which the Tax Court affirmed a deficiency assessment based upon the disallowance of a deduction of a claimed business bad debt. The question arises under Section 23 of the Internal Revenue Code of 1939, 26 U.S. C.A. § 23, and requires a review of the Tax Court's finding that the taxpayer was not engaged, in the relevant years, in the business of promoting and financing corporate ventures and of its conclusion, based upon the finding, that Section 23 (k) (1) and (4) prohibited a deduction of the loss.

The facts are fully set forth in the opinion of the Tax Court and need only be summarized here.

The petitioner, who was born in 1863, was employed in 1883 by the Bank of Virginia in Roanoke. A year or so later, he left the bank to deal, on his own account, in interest bearing scrip. Somewhat later he began to accept deposits, make small loans, finance small enterprises and conduct and advertise himself generally as a private banker. In 1920, when regulatory legislation was adopted, he stopped describing himself as a private banker, and thereafter accepted no checking accounts. He continued, however, to make loans to individuals and to business organizations.

During his lifetime, he, either alone, with his brother-in-law or with others, organized at least 25 corporations to conduct a variety of businesses. He did not participate directly in the management of any of these corporations, but he did select, or participate in the selection of their management, and he maintained an interest in their general policies and their progress. To many of these, he lent financial assistance, most frequently for short terms and in the form of advances on open account without interest.

As will later appear, however, the numerical volume of this activity was concentrated in the years preceding 1932.

One of the businesses the taxpayer promoted was the Stone Tile Company, which he and his son organized in 1926 to manufacture and sell cinder blocks. The son was in charge of the business of Stone Tile, but it did not prosper, and, ultimately, went into receivership. The taxpayer, having acquired Stone Tile's assets from the receiver, transferred them in 1938 to a new corporation known as Cinder Block, Inc., of Roanoke.[1] The taxpayer and the son owned substantially all of the stock of the cinder block com-

---

[1] Title to the land was taken in the name of another newly formed corporation, which was merged into Cinder Block in 1950. It does not appear that this corporation engaged in any business other than holding title to the real estate which it leased to Cinder Block. In 1945, yet a third corporation was organized which leased all of Cinder Block's assets and which, thereafter, was the operating company.

panies. The son acquired his stock, in part, by gift from the taxpayer and, in part, with funds borrowed from the taxpayer. The son was actively in charge of the cinder block business, and, though frequently consulted by the son, the taxpayer took no active part in its management.

In 1949, modernization and expansion of the facilities of the cinder block companies was undertaken. $100,000.00 was borrowed from a bank for this purpose. The bank asked for, and obtained, the taxpayer's endorsement on the notes. While the construction work was proceeding, in 1950, the principal structure of the plant collapsed, injuring employees and damaging other structures. The operating company obtained a judgment against the construction company covering some of the loss, but the uncompensated damage to the facilities of Cinder Block, Inc., of Roanoke was so great that it became insolvent. In 1951, the taxpayer, as endorser, paid off the $100,000.-00 loan at the bank. Cinder Block was already indebted to the taxpayer, on account of advances in previous years, in a substantial sum. After applying all of the remaining assets of Cinder Block to the payment of its indebtedness to the taxpayer, including the $100,000.00 note, there was a deficit of $118,503.10, the loss claimed by the taxpayer as a business bad debt deduction.

While the taxpayer in earlier years had promoted many new business enterprises, we can find in the record no evidence that he promoted a single such enterprise in the twenty years preceding 1951, the tax year. He did not promote such an enterprise in 1951 and has not done so since. Since 1951 he has invested a total of $6,000.00 in stock in two corporations organized to construct parking buildings in Roanoke, but it does not appear that his activitiy with respect to these companies was more than passive investment of his funds in new corporate ventures promoted by others. He has caused several corporations to be organized in connection with the cinder block business, but each of these was essential-

ly a reorganization of the same old cinder block business rather than the promotion of a new venture. It is said that he considered other business opportunities, including construction and leasing of warehouses and filling stations, but he entered upon no such ventures for he considered his income tax bracket too high to justify the risk of his capital. Whatever the reason for his failure to promote new business ventures for more then twenty years, consideration of possible ventures is not the same as active promotions. Something more than mere consideration of a promotion is required before one earns recognition and treatment as a promoter.

Though there seems little doubt that the taxpayer was a promoter prior to 1930, that fact does not require a finding that he was still a promoter in 1951. Many men change their occupations and their businesses, and, in the application of taxing statutes, there must be recognition that they do. Many such changes in the business life of a man, perhaps most, are accompanied by a dramatic or definitive act which not only establishes the fact of the change, but fixes precisely the time of its occurrence. The nature of the business of a promoter, however, makes it unlikely that withdrawal from the business would be accompanied by such an act. Inaction for a considerable period of time, because of want of opportunity or other reason, may not mean that an individual has ceased to be a promoter; if, after the lapse of some time, he again undertakes a promotion, a finding that he is a promoter may even be required. But the lapse of more than twenty years without any new promotional activity abundantly justifies the finding of the Tax Court that the taxpayer, in 1951, was not engaged in the business of a promoter. McNeill v. Commissioner, 4 Cir., 251 F.2d 863.

Since the taxpayer, in the beginning, did promote the cinder block business, it may be said that his continued financial assistance was a continuation of his promotional activity which commenced at least as early as 1926. We do not have

the operating statements of the cinder block companies, but, aside from the fact they may have provided a livelihood for the taxpayer's son, it is apparent they were not greatly profitable. A judgment for personal injuries in the amount of $50,000.00[2] occasioned their reorganization in 1938. Cinder Block had but a small surplus when, in 1950, it sustained damage to its facilities resulting in the taxpayer's loss and another reorganization of the business. So far as appears, in all of these years, the taxpayer received no interest on his advances and no dividends upon his stock. If his predominant purpose was to reap a profit upon an advantageous disposition of his stock, it can be imagined that, long prior to 1951, he would have become discouraged. Certainly the circumstances give rise to a justifiable inference that, by 1950, his primary purpose, as that of any other wealthy father, was to come to the financial rescue of the business which occupied the time and attention and provided support of the son.

The taxpayer contends that he was engaged in the business of financing, as well as promoting, business ventures, but his activities in that respect also became restricted with the passage of the 1920's. From the end of 1931 through 1953, substantially his only loans were advances to the cinder block companies. Indeed, the only other advances made by him in this period were to a Randolph Market Co., Inc. Except in 1938, the advances to the market company were small, and at the end of every year, beginning in 1925, that company had a credit balance on his books, until the account was finally closed in 1938. During these years he also endorsed notes, or otherwise guaranteed debts, of the cinder block companies, of his son and of his office assistant. Except in inconsequential amounts, he did

not thus lend his credit to any one else, and the exceptions appear to be individuals rather than businesses.

■■ It is now well settled that debts such as these are not deductible as business bad debts unless the taxpayer is so extensively engaged in the business of promoting or financing business ventures as to elevate that activity to the status of a separate business. It is not required that he be engaged in no other business, but limited activity in aid of one business venture only and in support of the personal finances of a son and of a close business associate is not so extensive as to require a finding that it constituted a separate business. The Tax Court has found that it did not, and we are bound by that finding. Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; Gulledge v. Commissioner of Internal Revenue, 4 Cir., 249 F.2d 225; Skarda v. Commissioner of Internal Revenue, 10 Cir., 250 F.2d 429; Towers v. Commissioner of Internal Revenue, 2 Cir., 247 F.2d 233; Wheeler v. Commissioner of Internal Revenue, 2 Cir., 241 F.2d 883; Commissioner of Internal Revenue v. Schaefer, 2 Cir., 240 F.2d 381; Hickerson v. Commissioner of Internal Revenue, 2 Cir., 229 F.2d 631; Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310, certiorari denied, 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343.[3]

The taxpayer complains that the Tax Court found that he was engaged in no business yet did not disallow the deduction of the taxpayer's office expense. We do not so understand the Tax Court's finding.

Through all of these years the taxpayer maintained an office to which he regularly went in the mornings. It was shared with a construction company and one of the officials of the construction

2. Apparently the liability of the companies was uninsured.

3. The regularity of such activity, which is a requirement of Section 122(d) of the 1939 Code, 26 U.S.C.A. § 122(d), may

not be a requirement of an allowable deduction under Section 23. As applied to these facts, however, the difference in the language of the two sections appears immaterial.

company served as the taxpayer's assistant while a stenographer served the construction company, the taxpayer and the estate of the taxpayer's brother-in-law, of which the taxpayer was the executor. The taxpayer had accumulated substantial real estate holdings. In the main they were under long term leases, but they, and others of his investments, as well as the estate of his brother-in-law, required his attention. In the year in question he had income of $90,922.77 from rents, $47,286.74 from dividends, of which $43,492.00 was from one company he had helped to finance in its infancy in the 1920's and in which he had become a stockholder in the 1930's. The remainder of his dividend income was upon listed stocks, the stock of banks and other businesses which, so far as appears, had never been promoted by him. In the year in question he had interest on Government Bonds and there was a miscellaneous income item of $65.64. It also appears that at times he bought real estate, both for resale and investment. His business interests thus were substantial and doubtless required more of his attention than the passive investment in marketable securities with which most wealthy individuals are concerned. But the fact that neither the Commissioner nor the Tax Court questioned the deduction of his office expense, indeed, though it be assumed that he was engaged in a business which made the deduction of such expenses unquestionably allowable, it still does not follow that he was engaged in the business of promoting and financing business ventures. That was the only question before the Tax Court and the only one it decided.

Finally, the taxpayer contends that his payment as endorser of the note of Cinder Block in the amount of $100,-000.00 should be allowed as a loss under Section 23(e) (2), but this contention was foreclosed by Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed. 2d 144.

The finding of the Tax Court that the taxpayer was not, in the years in question, engaged in the business of promoting and financing business ventures was not clearly erroneous and we are bound by it. Its conclusion of law follows inevitably from its finding.

Affirmed.