Merriman H. HOLTZ and Helene Tyroll Holtz, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15755.

United States Court of Appeals Ninth Circuit.

June 12, 1958.

Moe M. Tonkon, Portland, Or., for appellants.

Charles K. Rice, Asst. Atty. Gen., Melvin L. Lebow, Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., for appellee.

Before POPE, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

This is a petition for review of a Tax Court decision sustaining the Commissioner's determination of deficiencies in income taxes of the petitioners (husband and wife, herein referred to as petitioner) for the years 1949 and 1950. Petitioner, as guarantor of certain corporate obligations, sought to deduct as *business* bad debts (26 U.S.C. § 23, Internal Revenue Code of 1939 § 23(k) (1)) certain amounts he was compelled to pay upon default of corporate debt. The Commissioner determined that the losses thus sustained were *non-business* bad debts and deductible under the more limited provisions of § 23(k) (4), which provides short term capital loss treatment for non-business bad debts, as opposed to the ordinary losses allowed from business bad debts under § 23(k) (1).

Both the Tax Court and this Court have jurisdiction. 26 U.S.C. (I.R.

C.1939) § 1141(a); (I.R.C.1954) § 7482 (a).

The sole question presented on appeal is not whether the deduction is allowable, but how. Did the Tax Court err in holding that a loss resulting from the petitioner's guaranty of loans made to a corporation was deductible by him as a non-business bad debt, rather than as a business bad debt, as claimed by the taxpayer?

## I. Statutory Law

The relevant provisions of § 23(k) of the 1939 Act as applicable in 1949 and 1950 are set out in the margin.[1] This statute defines a non-business debt as "a debt * * * other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." To determine whether the loss was incurred in the taxpayer's business requires a definition of the taxpayer's business. This is a mixed question of law and fact. We must first examine the stipulated facts in this case, found by the Tax Court to be as stipulated.

## II. Stipulated Facts

Petitioner for many years prior to 1949 was the ninety-percent owner of the stock of a ladies' retail apparel store in Portland, Oregon, Helene's, Inc. This operation failed in 1949, but prior to this time petitioner has been president of the firm and active in its management.

During this period the corporation obtained substantial loans, which were guaranteed by petitioner.

Petitioner has been engaged since 1930 in the business of selling and distributing 16 mm. film, audio visual equipment, supplies and accessories. Petitioner organized Pictures, Inc. in 1930, but this corporation remained inactive until 1949 when petitioner advanced to it the funds necessary to commence business in the territory of Alaska, where it has since continued business. Holtz was the manager and owned ninety-nine of its one hundred shares.

In 1932 petitioner formed Screen Adettes, Inc., which has since been engaged in the sale and distribution of 16 mm. films. Petitioner is president, manager, in effect sole shareholder and has been continuously engaged in its affairs. During the period of its operation, petitioner occasionally made advances to Screen Adettes, Inc., and has personally guaranteed all bank loans to it.

In 1945 petitioner organized Screen Adettes Equipment Corporation (herein called Equipment) for the sale and distribution of motion picture equipment and accessories on the Pacific Coast. Petitioner was the owner of five hundred of five hundred and three shares of stock. Besides the original investment, Equipment obtained working capital through a loan from the U. S. National Bank of

---

1. Internal Revenue Code, 1939. Sec. 23. Deductions from gross income, reads in pertinent part:

    "In computing net income there shall be allowed as deductions:

    * * * * *

    "(k) Bad debts.

    "(1) General rule. Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this sub-section. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *

    * * * * *

    "(4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. *The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.*" [Emphasis added.]

Portland, which loan was personally guaranteed by petitioner who pledged as collateral certain shares of common stocks of a value substantially in excess of the amount of the loan. In 1949 Equipment filed its petition in bankruptcy, ceased doing business and was dissolved. In early 1950 the bank sold the collateral securities for less than the amount of the loan, realizing $83,316.00 on the sale and left petitioner indebted on his guaranty in the amount of $64,-119.00. The former is the amount which petitioner claims as a bad debt loss incurred in his trade or business for the year 1950 and which, if allowed, gives him a net operating loss carryback to 1949. (A refund of 1949 taxes was recovered and the Commissioner now seeks return of this amount as a refund illegally paid.)

During a part of 1950 petitioner was engaged as a sole proprietor in the sale and distribution of audio visual equipment. He was also employed part-time as a salesman for an audio film firm.

Apparently petitioner participated, either as lender or guarantor, in approximately two hundred and fifty loans to the four corporations which he owned, controlled, and managed.

Petitioner makes two basic contentions of error:

■ 1. That the legislative history makes it clear that Congress intended to prohibit full bad debt deductions only in the case of loans to relatives or friends made without prospect of repayment or which would give the taxpayer a dependency credit to which he was not otherwise entitled. Therefore, the section is improperly applied to good faith business transactions, such as those here, revealing a long history of continued similar activity by the taxpayer.

2. Alternatively, if the law applied was correct, the finding of fact by the Tax Court is clearly erroneous in that petitioner's activities fall within that line of cases holding that one who is engaged in the financing, organizing, promoting, and managing of corporations is

entitled to a business bad debt deduction for losses incurred in loans to such corporations.

We conclude neither of petitioner's contentions is sound.

As to the first, his entire argument is based on a short statement in the summary explanation of the provisions of the Revenue Act of 1942, contained in the House Report of the bill (1942–2 Cum. Bull. 372, 408). This very short summary notes that the bad debt provisions have been the subject of abuses and gives *as an example* of a non-business bad debt, an unrepaid loan to a relative or friend, while an example of a business bad debt is one incurred in the trade or business of the taxpayer.

In the detailed technical explanations of the provisions of the bill, no such example is given; a business bad debt is defined as one incurred in the trade or business as defined for the purposes of § 23(e) (*losses* incurred in the trade or business), and the proximity of relationship required is stated. Petitioner ignores the latter committee statements and argues that the interpretation of the statute must be determined from the congressional intent expressed in the summary (see 1942–2 Cum.Bull. at 431 (House Report), 572 (Senate Report)).

Congress has expressly established the standard for determining whether a transaction was within the trade or business of the taxpayer, i.e., the standard used for business losses under § 23(e), and thereby indicated that because abuses have revealed need for revision of the statute that revision was comprehensive and sweeping, and was not merely limited to the particular abuses giving rise to the revision, or those used as examples.

Further, the Supreme Court has recently expressly rejected any such interpretation of the committee reports by pointing out that the summary noted above merely cites *as an example* loans made to relatives or friends and stating that not even this segment of the committee reports supports such a contention

as made both before that Court and in the instant case. Putnam v. Commissioner, 1956, 352 U.S. 82, 91, note 17, 77 S.Ct. 175, 1 L.Ed.2d 144.

Further, regulations, using the language of the committee report, have been issued on the subject:

"The character of the debt * * * is to be determined * * * by the relation which the loss resulting from the debts becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a non-business debt for the purposes of this section." § 29.23(k)–6 of Treasury Regulation III promulgated under the Internal Revenue Code of 1939.

■ Once it is established that the correct legal standard was applied by the Tax Court, the issue of whether petitioner was engaged in a trade or business is one of fact and subject to the clearly erroneous rule of F.Rules Civ.P. 52(a), 28 U.S.C. Higgins v. Commissioner, 1941, 312 U.S. 212, 217, 61 S.Ct. 475, 85 L.Ed. 783; Towers v. C. I. R., 2 Cir., 1957, 247 F.2d 233; Omaha Nat. Bank v. C. I. R., 8 Cir., 1950, 183 F.2d 899, 25 A.L.R.2d 628; Maloney v. Spencer, 9 Cir., 1949, 172 F.2d 638, 640.

Petitioner relies on the line of cases which hold that a stockholder's loan to one of his corporations may qualify as a business bad debt if the stockholder was engaged in promoting, organizing, financing and managing business enterprises, or in other words, was engaged in the business of being a promoter. Petitioner unsuccessfully seeks to bring himself within the facts of certain of the promoter cases. Each of those cases is distinguishable.

In Maloney v. Spencer, supra, the taxpayer organized three corporations to engage in the food packaging business. He retained ownership of the equipment needed and rented it to the corporations under leases which contained express clauses requiring the lessor to obtain financing for the corporate activities. This Court held that the activities were "extensive, varied, continuous and regular," that there was continuity and frequency, and that taxpayer *was engaged in two businesses*, i.e., the food business through his corporations and the business of leasing equipment pursuant to which the loans resulting in losses were made. The lease requirements are sufficient to distinguish the Maloney case, although it is important that the transactions involved all occurred in a two year period. Petitioner says if he had leased his property to his corporations here Maloney would require a decision for him. This is not true because of the express provisions of the leases, the time differences, and the nature of the business done by the corporations. But even if such contention were correct, petitioner here chose to operate in the manner he did, and he must therefore accept the disadvantages of the corporate form along with whatever advantages he obtained therefrom in the past.

Giblin v. C. I. R., 5 Cir., 1955, 227 F.2d 692, involved a practicing attorney who promoted, financed, and participated in some twelve different corporations over a period of some twenty years. The Court found that the taxpayer spent some fifty percent of his time so engaged and that the corporations had nothing whatsoever to do with his law practice. Petitioner here says that his is the same situation and the mere greater number of corporations cannot make any difference in the result. We agree that numerical comparison is no basis for decision, but the Giblin case contains a clear finding of fact that the taxpayer was engaged in the business of "seeking out business opportunities, promoting, organizing and financing them, contributing to them substantially 50% of his time and energy and then disposing of them either at a profit or loss." 227 F.2d at page 696. That finding is amply supported by the facts, but is clearly not the case here, where petitioner's sole businesses were (1) the sale and distribution of film and

equipment, and (2) sale of ladies' retail apparel, which businesses he chose to carry out through the medium of several corporations.

Similarly, in C. I. R. v. Stokes' Estate, 3 Cir., 1953, 200 F.2d 637, there was an express finding of fact that the taxpayer was engaged in the business of exploiting patents as well as participating in corporations he organized to operate under the patents he obtained.

And in Campbell v. C. I. R., 1948, 11 T.C. 510, there was an express finding that the taxpayers were engaged in the business of promoting, financing, organizing and managing corporations to operate coal mines and therefore loans to the corporations were in the taxpayers' trade or business of promoting. Said Judge Murdock:

"These are not cases in which losses of corporations are being confused with losses of individuals, or in which the business of a corporation is being confused with the business of individuals." Id. at page 512.

The recent case of Ferguson v. C. I. R., 4 Cir., 1958, 253 F.2d 403, 404, had to do with a taxpayer who was actually in a business where he would "make small loans, finance small enterprises and conduct and advertise himself generally as a private banker * * * [and] organized at least 25 corporations to conduct a variety of businesses." Most of these activities were prior to 1932. In 1949 he guaranteed a bank loan made to one of the companies he organized; and in 1951 paid on his guarantee. The court held that although taxpayer was a promoter prior to 1930, he was not in such business in 1951. The court then used language applicable here:

"It is now well settled that debts such as these are not deductible as business bad debts unless the taxpayer is so extensively engaged in the business of promoting or financing business ventures as to elevate that activity to the status of a separate business. * * * The Tax

Court has found that [he] did not, and we are bound by that finding." Id. at page 406.

■■ Petitioner here claims that his continued use of the corporate form coupled with the two hundred and fifty loan transactions in which he participated show conclusively that he was a promoter within the meaning of these cases. What petitioner fails to recognize is the distinction between carrying on one's business through a corporate form, which, of course, requires some organizing and financing, and the business of dealing in corporations, which may likewise require some financing arrangements. Where the former is the situation, it is hornbook law, and not contested by petitioner, that the corporate entity is the primary debtor and stockholder loans to protect his investment or increase its value do not create a separate business for the stockholders. As the Fifth Circuit recently said in distinguishing the Giblin case, supra, "Petitioner was not engaged in the business of dealing in enterprises." Pokress v. C. I. R., 1956, 234 F.2d 146, 150 note 12. Nor did the Tax Court, nor do we, find him so engaged here. The finding of the Tax Court is binding upon us unless clearly erroneous. Here, it is not.

"[The taxpayer] was not regularly engaged in indorsing notes, or buying and selling corporate securities. The unfortunate indorsements were not part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares." Burnet v. Clark, 1932, 287 U.S. 410, 415, 53 S.Ct. 207, 208, 77 L.Ed. 397.

To the same effect, see: Putnam v. C. I. R., 1956, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144; Ferguson v. C. I. R., supra; Skarda v. C. I. R., 10 Cir., 1957, 250 F.2d 429; Gulledge v. C. I. R., 4 Cir., 1957, 249 F.2d 225; Towers v. C. I. R., supra; Wheeler v. C. I. R., 2 Cir., 1957, 241 F.2d 883; C. I. R. v. Schaefer, 2 Cir., 1956, 240 F.2d 381; Pokress v. C. I. R., supra; Hickerson v. C. I. R., 2

Cir., 1956, 229 F.2d 631; C. I. R. v. Smith, 2 Cir., 1953, 203 F.2d 310; Omaha Nat. Bank v. C. I. R., supra.

Affirmed.