Edward W. Swift, Jr., and Vera H. Swift v. Commissioner.
Swift v. Commissioner
Docket No. 79879.
United States Tax Court
T.C. Memo 1961-107; 1961 Tax Ct. Memo LEXIS 241; 20 T.C.M. (CCH) 533; T.C.M. (RIA) 61107; April 14, 1961
*241 Petitioner's loss as guarantor of loans made to corporation of which he was principal officer and stockholder is deductible as nonbusiness bad debt under sec. 166(d), I.R.C. 1954. Edward W. Swift, Jr., pro se, 1700 Buena Vista Rd., Columbus, Ga. Wallace M. Wright, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1955 and 1956 in the amounts of $10,548.56 and $41.34, respectively. Petitioners did not assign error with respect to the deficiency for the year 1956. The only remaining issue is whether a loss in the amount of $181,253.85 sustained by petitioner Edward in 1955 as guarantor of loans to Swift Construction Company is deductible as a nonbusiness bad debt under section 166(d) of the 1954 Code, [1] as determined by respondent, or as a loss under section 165(c) or a business bad debt under section 166(a), as contended by petitioners. Findings of Fact The stipulated facts are so found. *243 Petitioners were husband and wife residing together in Columbus, Georgia, throughout the years 1955 and 1956. They filed joint income tax returns for those years with the district director of internal revenue at Atlanta, Georgia. Swift-Freeman Construction Company, a corporation whose name was later changed to Swift Construction Company (hereafter referred to as Construction Company), was organized by Edward W. Swift, Jr., and three other individuals in 1946. It engaged in the general construction business. Its original paid-in capital was $5,000 of which Edward paid $2,800, representing his subscription to 112 shares at the par value of $25 per share. Edward was president and a director of this corporation. The corporation is still in existence but inactive. In June 1946, Edward purchased 2,000 shares of 6 percent cumulative preferred stock of Construction Company having a par value of $25 per share for $50,000. In May 1947, Edward purchased 680 additional shares of this preferred stock for $17,000 and thereafter Edward owned most of the stock in Construction Company. The corporation operated at a net loss for at least 5 of the 8 years between 1947 and 1954, inclusive. In 1947, *244 Construction Company organized Colonial Homes, Inc., a Georgia corporation. All of the stock of Colonial Homes, Inc., was owned by Construction Company and one or two individuals, none of the stock being owned by petitioners. This corportion built a large apartment development in Atlanta, Georgia, under an FHA-insured loan. Edward was president and a director of Colonial Homes, Inc., from 1949 through 1955. In 1954, Construction Company ventured into the development of a shopping center in Columbus, Georgia. Financing arrangements were made by Edward with the First National Bank of Atlanta for a construction loan of $1,625,000. Pursuant to these arrangements, notes evidencing construction money advanced were issued as follows: [2]
Date
Maker
Amount
Sept. 15, 1954
Swift Construction Co.
$205,000.00
Feb. 21, 1955
Swift Construction Co.
20,000.00
Feb. 21, 1955
Swift Construction Co.
357,500.00
Apr. 19, 1954
Colonial Realty & Ins. Co.
516,728.73
Sept. 15, 1954
Edward W. Swift, Jr.
27,000.00
Nov. 10, 1954
Edward W. Swift, Jr.
50,000.00
*245 For reasons not appearing in the record, the First National Bank of Atlanta stopped loaning construction funds after approximately $1 million had been advanced. As a consequence, the Columbus, Georgia, shopping center project on which Construction Company had embarked was not completed. As security for the loan from the bank, Construction Company furnished the bank collateral including all of the stock of Colonial Homes, Inc. Edward personally furnished the bank with additional collateral consisting of his own personal property, including stock in West Point Manufacturing Company, Swift Spinning Mills, Muscogee Manufacturing Company, and Swift Manufacturing Company. Edward also endorsed the notes made by Construction Company. His purpose in endorsing the corporation's notes was to assist the corporation in securing funds to carry on its business. In 1955, after the bank stopped advancing construction funds and work on the shopping center was stopped, the creditorbank proceeded to sell the personal property of Edward which had been pledged to the bank as security for the notes listed above. The net proceeds realized by the bank from the sale of the property amounted to $255,330.88. *246 These proceeds were applied by the bank to Edward's liabilities as maker and endorser of notes as follows: Notes of Edward W. Swift, Jr., - $74,077.03; notes of Swift Construction Company endorsed by Edward - $181,253.85. On their joint income tax return for the year 1955, petitioners reported the net gain of $152,415.14 from the sale by the bank of Edward's personally owned securities pledged as collateral, as long-term capital gain. Their investment in stock of Construction Company and Colonial Realty and Insurance Company, in the amount of $6,585, was also reported as long-term capital loss from securities which became worthless during the taxable year. They also reported "Payments to The First National Bank, Atlanta, Georgia, as guarantor of loans for the Swift Construction Company, Columbus, Georgia," in the amount of $181,253.85, as a loss from a transaction entered into for profit, deductible in full. [3] Respondent conceded that a loss of $181,253.85 was sustained by petitioners during the year 1955 but determined that the loss was not sustained by petitioners in the course of their trade or business or any transaction entered into for profit and is deductible only as a loss *247 from a nonbusiness bad debt under section 166(d). In addition to Construction Company, Edward was involved at various times from 1941 through 1955 in the organization and operation of the following corporations. Greensboro Nehi Bottling Company was organized by Edward and others in 1941. By 1944 Edward had invested $15,000 in stock of this company, which was 45 percent of its total capital. Edward was vice president and a director of this corporation until 1944, when he resigned his offices and sold his stock for $22,000. Edward received a salary from this company in the amounts of $1,999.99 for 1942, $1,600 for 1943, and $400 for 1944, and dividends in the amount of $450 in the year 1943. On their income tax return for the year 1944, petitioners reported the $7,000 gain on the sale of the bottling company stock as long-term capital gain. Columbus Airways, Inc., was organized by Edward and others in September 1944, for the purpose of setting up an airline passenger-feeder *248 operation and thence to go into the general air service business in Columbus, Georgia. Edward acquired 162 shares, out of the 1,350 shares issued, at a cost of $16,200. As a result of a disagreement among the stockholders, Edward sold his share in 1950 for $2,340.90, realizing a loss of $13,859.10. On their tax return for the year 1950, petitioners reported the sale of their stock in the company as long-term capital loss. Colonial Realty and Insurance Company was organized by Edward and four other persons in September 1947, for the purpose of engaging in the business of real estate rentals and insurance transactions. Its total paid-in capital was $1,020. Edward subscribed to 112 of its 204 shares. This company handled the collection of rentals on the Colonial Homes development and also was engaged in the ill-fated shopping center project at Columbus, Georgia, as the equity owner of the land. The stock in this company became worthless in 1955, and petitioners reported their loss as a result thereof as a long-term capital loss. E. W. Swift and Company was organized near the end of the year 1955 to do business in real estate and insurance. At the time of trial it was engaged in the *249 development of cooperative apartments. The record does not disclose Edward's interest in this company or other relevant data which might make the affairs of this organization pertinent here. During the years 1941 through 1955, petitioners reported only small amounts as interest income, the interest reported being principally from Government bonds, and, for the year 1955, the amount of $642.19 from Construction Company. Edward was not engaged in the business of organizing, promoting, financing, and managing corporations in 1954 and 1955. Opinion On brief petitioners argue that the loss of $181,253.85 should be deductible in full as "a business bad debt under section 165(c)(1)." Respondent conceded that petitioners suffered a loss in that amount in 1955 but determined that it is deductible only as a nonbusiness bad debt under section 166(d), subject to the limitations on the deductibility of capital losses. This is the only issue for decision. The Supreme Court said in Spring City Co. v. Commissioner, 292 U.S. 182 (1934), that the provisions of section 234(a)(4) of the Revenue Act of 1918 (the predecessor of section 165), allowing a deduction for "losses sustained *250 during the taxable year and not compensated for by insurance or otherwise," and of section 234(a)(5) of the Revenue Act of 1918 (the predecessor of section 166), allowing a deduction for bad debts becoming worthless within the taxable year, are mutually exclusive, and in Putnam v. Commissioner, 352 U.S. 82 (1956), that a "loss attributable to the worthlessness of a debt shall be regarded as a bad debt loss, deductible as such or not at all." Petitioners' reliance on section 165(c)(1) for allowance of a business bad debt loss is therefore misplaced. If the loss was from a bad debt, it is deductible, if at all, under section 166. In the Putnam case, the Supreme Court also held that a loss suffered by a guarantor upon being required to pay the obligation of the principal debtor is a bad debt loss. While the record here is rather bare of competent evidence as to details of the lending agreements and the steps taken by the bank in selling this collateral and applying it on the various notes, we must assume from what evidence there is and petitioners own characterization of the transaction on their returns, as well as respondent's determination, that this loss was incurred *251 by Edward as guarantor of a loan to Swift Construction Company. Petitioners must therefore rely on section 166 for the right to deduct their loss. Spring City Co. v. Commissioner, supra; Putnam v. Commissioner, supra; Wilkins Pontiac, 34 T.C. 1065 (1960), on appeal by petitioner on Dec. 27, 1960, and by Commissioner on Mar. 3, 1961, (CA-9); cf. Wheeler v. Commissioner, 241 F. 2d 883 (C.A. 2, 1957), affirming T.C. Memo. 1955-138; Henry v. United States, 180 F. Supp. 597 (Ct. Cl., 1960). Compare section 166(f) with respect to losses of guarantors of noncorporate obligations. Section 166(a)(1) provides that there shall be allowed as a deduction any debt which becomes worthless within the taxable year. However, section 166(d) provides that in the case of a taxpayer other than a corporation, subsection (a) shall not apply to any nonbusiness debt but that the loss on a nonbusiness debt shall be considered the same as a short-term capital loss. Subsection (d)(2) defines a nonbusiness debt as a debt other than - *252 (A) a debt created * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. To be entitled to deduct a loss from a debt becoming worthless as a business bad debt under section 166 (or its predecessors) the debt must have been proximately related to the taxpayer's own trade or business, Aubrey S. Nash, 31 T.C. 569 (1958), as distinguished from the trade or business of a corporation in which the taxpayer is an officer and stockholder. Burnet v. Clark, 287 U.S. 410 (1932); Wheeler v. Commissioner, supra; H. Beale Rollins, 32 T.C. 604 (1959), affd. 276 F. 2d 368 (C.A. 4, 1960); Phil L. Hudson, 31 T.C. 574 (1958). In recognition of this principle, petitioners claim that Edward was in the business of organizing, promoting, financing, and managing corporations and that this loss was connected with or incurred in that business. For recognition of a loss such as this as having been incurred in the business of promoting or dealing in corporations, petitioners must prove that it was "sustained *253 in the course of promoting, financing, or lending activity so extensively carried on [by Edward] as to elevate that activity to the status of a separate business." H. Beale Rollins, supra; Ferguson v. Commissioner, 253 F. 2d 403 (C.A. 4, 1958), affirming 28 T.C. 432 (1957). This petitioners have failed to do. Edward's so-called promotional activities since 1940 consisted of investing in Greensboro Nehi Bottling Company, Columbus Airways, Inc., Swift Construction Company, Colonial Realty and Insurance Company, and E. W. Swift and Company, in each of which Edward was also an officer and director. There is no evidence that Edward was "dealing" in any of these corporations. He testified that he held his stock in the bottling company from 1941 to 1944, during which time he received a salary and dividends therefrom, and sold it in 1944 for some unexplained reason, reporting his gain as long-term capital gain. He held his stock in Columbus Airways, Inc., from 1944 to 1950 at which time he sold it at a loss because of a disagreement among the stockholders, and reported the loss as a capital loss. The activities of the remaining three companies *254 were all related to Edward's entry into the construction business in corporate form. Construction Company and Colonial Realty were not sold but became inactive when the bank's action in foreclosing the loan made it necessary to discontinue their business activities. These companies were not promoted and then sold by Edward - rather they were used by him to conduct his business of real estate development. Having chosen to conduct these businesses in corporate form, Edward is bound thereby and must recognize the distinction between carrying on one's business in corporate form, which requires some organizing and financing, and the business of dealing in corporations, which may also require some organizing and financing. Holtz v. Commissioner, 256 F. 2d 865 (C.A. 9, 1958), affirming T.C. Memo. 1957-106. [4]
There is no indication that Edward ever reported his gain or loss on the sale of his interest in any corporation as ordinary income or loss, which would be some support for his claim of being a promoter. H. Beale Rollins, supra. In fact, he reported *255 the loss on the worthlessness of his stock in Construction Company and Colonial Realty as long-term capital loss on his return for the year 1955 here involved. In our opinion, it is clear from the record as a whole that in endorsing the notes of Construction Company, in this transaction, Edward was assisting the corporation in the conduct of its business, and the loss resulting therefrom was not proximately related to any separate trade or business conducted by Edward, individually. Consequently, the loss is deductible only as a nonbusiness bad debt under section 166(d) and respondent's determination must be sustained. Decision will be entered for the respondent. Footnotes
1. All section references are to the 1954 Code unless otherwise indicated.↩
2. Neither the notes, nor a collateral loan agreement, if any, nor the testimony of any officer of the bank was offered in evidence.↩
3. No loss was claimed as such for the amount applied to payment of the notes signed by Edward as maker. The amounts applied appear to be agreed upon by the parties. We are unable to verify them from the record.↩
4. We have no evidence as to petitioners' activities with respect to E. W. Swift and Company.↩