ALBERT J. BERNARD and JANICE C. BERNARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bernard v. Commissioner
Docket No. 4605-70.
United States Tax Court
T.C. Memo 1973-69; 1973 Tax Ct. Memo LEXIS 219; 32 T.C.M. (CCH) 297; T.C.M. (RIA) 73069; March 26, 1973, Filed *219 Held, petitioner was not in the separate business of promoting, financing, managing, and organizing businesses, or of lending money during the taxable years 1964 and 1965, and certain losses sustained by petitioner in those years are not deductible as business bad debts under sec. 166(d) (2), I.R.C. 1954. Bernard L. Weddel, for the petitioners. Lawrence G. Becker, for the respondent. WITHEY
MEMORANDUM FINDINGS OF FACT AND OPINION WITHEY, Judge: Respondent determined deficiencies in petitioners' income tax for the taxable years 1964 and 1965 2 in the respective amounts of $3,857.28 and $7,558.99. [1]
The issues for our consideration are: (1) Whether the loss sustained by petitioner in 1964 due to the worthlessness of his common stock in Bohemian Surf Equipment Manufacturing Company is deductible by him as a business bad debt pursuant to section 166(a) (1), I.R.C. 1954, or as a worthless security under section 165(g), I.R.C. 1954; and (2) whether the losses sustained by petitioners in 1965 due to the worthlessness of loans made to this corporation *220 and Wesley Deas are deductible as business bad debts or as nonbusiness bad debts. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Albert J. and Janice C. Bernard are husband and wife and resided in San Francisco, California, when they filed the petition herein. They filed joint Federal income tax returns for the taxable years 1964 and 1965 with the district director of internal revenue, San Francisco. Janice C. Bernard is a party to this controversy solely because she filed joint income tax returns for the years 1964 and 1965 with her husband Albert J. Bernard. Any 3 reference hereinafter to petitioner will refer solely to Albert J. Bernard. In 1936 the petitioner began his employment as sales manager for the Louis F. Dow Company (hereinafter sometimes referred to as Dow), St. Paul, Minnesota. Petitioner maintained his position as sales manager for Dow through the taxable years involved herein. Dow sold promotional sales items. Petitioner spent between 30 and 50 hours each week in this work for Dow. Beginning in about 1930 and continuing through the taxable years involved herein, the petitioner made investments in various business ventures. *221 At no time did Bernard receive a fee or salary from any of these ventures nor any benefit other than the normal investor's return. On November 4, 1960, Velzy Sports Equipment Manufacturing Company was incorporated as a California corporation with authority to issue 25,000 shares of no par common stock. On December 19, 1960, the Articles of Incorporation of the Velzy Equipment Manufacturing Company were amended to change its name to Bohemian Surf Equipment Manufacturing Company, sometimes hereinafter referred to as Bohemian Surf. Petitioner acquired 3,010 shares of Bohemian Surf common stock in exchange for consideration of $30,100 as 4 follows: June 1, 1961
2,010
November 12, 1962
1,000
Total
3,010
From May 1, 1961 to April 12, 1962, petitioner was president of Bohemian Surf. He was also director of that corporation during the entire term of its existence. He did not receive compensation for serving in either of these positions. In 1964 the common stock of Bohemian Surf held by petitioner became worthless. Bohemian Surf at no time made an election under section 1372(a) of the Code of 1954. At an unspecified date, the petitioner made a loan in the amount of $15,000 to Bohemian Surf, *222 which became worthless in 1965. In 1958, petitioner loaned $2,500 to Wesley Deas. [2] In 1965, the loan to Deas became worthless. On their joint Federal income tax return for the taxable year 1964, petitioners claimed a "loss on Investment Bohemian Surf. Mfg. Equip." in the amount of $30,100. Respondent in his statutory notice of deficiency disallowed this claimed deduction on the ground that it is a short-term 5 capital loss under section 166(d) of the 1954 Code. Respondent made a written motion to amend his answer to the petition, alleging that if the Court determines that the $30,100 in question was an investment in the common stock of Bohemian Surf and therefore a capital asset, the petitioners's loss is deductible as a loss from the worthlessness of a security under section 165(g) of the 1954 Code. Respondent further alleged that the petitioners are therefore entitled to a deduction for the loss in 1964 on their investment of $30,100 as limited by section 1211(b) of the 1965 Code. Respondent's motion to amend was granted. On their joint *223 Federal income tax return for the taxable year 1965, petitioners claimed "Employee's business expense" in the aggregate amount of $57,934.43, and on a statement attached to Form 2106, they enumerated several categories of expenditures which comprised most of this amount. Among these categories is "Bad debt expense" in the total amount of $26,597.07. No evidence was introduced with respect to the particular items included in this amount. Apparently, petitioner deducted as business bad debts the full amount of $15,000, representing a "loan to Bohemian Surf Manufacturing Company" and $2,500, representing a "loan to M. H. Wesley." Respondent, in his notice of deficiency, disallowed both of these amounts as business bad debts and determined that they were deductible only as short-term capital losses. 6 ULTIMATE FINDINGS OF FACT the common stock of Bohemian Surf owned by petitioner was a capital asset. Petitioner's only trade or business during the taxable period involved herein was that of sales manager for the Louis F. Dow Company. The loans made by the petitioner to Bohemian Surf and Wesley Deas were not proximately related to petitioner's trade or business. OPINION Issue 1. *224 Worthless Stock. During 1961 and 1962, petitioner purchased 3,010 shares of common stock in Bohemian Surf for $30,100; and in the taxable year 1964, the stock became worthless. On his income tax return for 1964, he reported the $30,100 as an "investment" loss, deductible in full in that year as an ordinary business loss. It is the petitioner's position that the history of his activities establishes that he is in the business of promoting, organizing, financing, and managing corporations for profit on their sale; that his loans to Bohemian Surf were proximately related to that business; and hence the loss resulting from the worthlessness of the stock, which was collateral for the loans, was properly deductible in full as an ordinary loss. Respondent, in opposition, contends that petitioner is not entitled to the aforementioned bad debt deduction in full because the 7 alleged debt was not incurred in the conduct of petitioner's trade or business within the meaning of section 166(d) (1) (A) and (B) of the 1954 Code. [3] In essence, respondent argues that the loss in question was due to the worthlessness of petitioner's capital contribution to Bohemian Surf, and that the loss therefrom *225 is deductible as a short-term capital loss under sections 165(g), [4]1211(b), and 1222(4) of the 1954 Code. It is well established that an individual, to be entitled to a deduction of a business bad debt, must show that the loss resulting from the debt's becoming worthless bears a proximate relationship to a trade or business in which he was engaged in the year in which the debt became 8 worthless. Sec. 1.166-5(b) (2), Income Tax Regs. Hickerson v.. Commissioner, 229 F.2d 631 *226 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court. IAubrey S. Nash, 31 T.C. 569 (1958); Hadwen C. Fuller, 21 T.C. 407 (1953); and Jan G. J. Boissevain, 17 T.C. 325 (1951). Although Congress did not define the term "trade or business," it made it clear in the committee reports that this concept was not intended to encompass all activities engaged in for profit, but was used in the realistic and restricted sense of a going trade or business. See Commissioner v. Smith, 203 F.2d 310 (C.A. 2, 1953), "The question whether a debt is a nonbusiness debt is a question of fact in each particular case." Sec. 1.166-5(b) (2), Income Tax Regs.
It is settled law that the business of a corporation is not the business of its officers. Burnet v. Clark, 287 U.S. 410 (1932). However, a worthless debt, resulting from a loan by a stockholder to his corporation may qualify as a business bad debt if the stockholder was engaged in promoting, organizing, financing, and managing business enterprises for a fee or for a profit on their sale. Henry E. Sage, 15 T.C. 299 (1950); Vincent C. Campbell, 11 T.C. 510 (1948); Langdon L. Skarda, 27 T.C. 137 (1956); Giblin v. Commissioner, 227 F.2d 692 (C.A. *227 5, 1955), reversing a Memorandum Opinion of this Court; Robert Cluett, 3rd, 8 T.C. 1178 (1947); Stuart Bart, 21 T.C. 880 (1954); and J. T. Dorminey, 26 T.C. 940 (1956). The authority of the foregoing line of decisions is 9 applicable only in the exceptional situations where the taxpayer's activities in promoting, managing, and making loans to a variety of businesses have been regarded as so extensive as to constitute a business separate and distinct from the business carried on by the enterprises themselves. H. Beale Rollins, 32 T.C. 604, 613 (1959), affd. 276 F.2d 368 (C.A. 4, 1960); Max M. Barish, 31 T.C. 1280, 1286 (1959); Charles G. Berwind, 20 T.C. 808, 815 (1953), affd. 211 F.2d 575 (C.A. 3, 1954); Holtz v. Commissioner, 256 F.2d 865 (C.A. 9, 1958), affirming a Memorandum Opinion of this Court; I. Hal Millsap, Jr., 46 T.C. 751 (1966), affd. 387 F.2d 420 (C.A. 8, 1968). In Whipple v. Commissioner, 373 U.S. 193 (1963), rehearing denied 374 U.S. 858 (1963), the Supreme Court in positive language clarified what must appear in order for a taxpayer to sustain a deduction as a bad debt loss on the basis of engaging in the separate trade or business of organizing, financing, or *228 promoting business enterprises for a fee or for a profit on their sale. Whipple, supra, involved loans by a substantial shareholder to one of several companies in which the taxpayer owned stock and for which he performed services. The Supreme Court held that the debts were not incurred in a trade or business of the taxpayer where his services were for the purpose of producing income or gain in the form of dividends or enhancement in the value of his 10 investment. The following language at p. 202 is significant in our analysis of the instant case: Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive by the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is *229 not a trade or business and the return to the taxpayer, though substantially the product of his services, legally arises not from his trade or business but from that of the corporation. [Emphasis supplied.] The Supreme Court found no merit in the contention that one who actively engages in serving his own corporations for the purpose of creating future income through those enterprises is in a trade or business. In that connection the Court disapproved, inter alia, Henry E. Sage, Vincent C. Campbell, and Robert Cluett, 3rd, all supra, "to the extent that they hold or contain statements to the contrary." Whipple v. Commissioner, supra, 203, footnote 10. Also the Court recognized that the presence of more than one corporation: might lend support to a finding that the taxpayer was engaged in a regular course of promoting corporations for a fee or commissioner * * * or for a profit on their sale * * * but in such cases there is a compensation other than the normal investor's return, income received directly for his own services rather than indirectly through the corporate enterprise. [Emphasis supplied.] [Whipple v. Commissioner, supra, At 202-203.] 11 In his endeavor to sustain the *230 burden of proving that his activities were extensive enough to warrant our finding that he was in such a separate business as defined in Whipple, petitioner testified concerning the numerous business ventures (about 25) which he allegedly organized and financed over the course of approximately 34 years. Except as to Bohemian Surf, his testimony with respect to these enterprises which do not find any affirmative support in the record, consists solely of self-serving statements. Virtually all of the ventures enumerated by petitioner were short-lived, nonprofitable, remote in years from subsequent activities, and generally too insignificant to contribute to the establishment of a pattern of business promotions. His testimony with respect to the enterprises was vague and not convincing. The record is insufficient, in our view, to support a finding that he organized the companies for the purpose of developing the corporations as going concerns for sale to customers in the ordinary course of a business. Significantly, petitioner testified that he could not recall receiving a "fee" from any of the businesses he allegedly caused to be formed. Whipple v. Commissioner, supra, at 202-203; *231 United States v. Byck, 325 F.2d 551 (C.A. 5, 1963). Petitioner has not borne his burden of proving that he sought any compensation other than the normal investor's return from the enterprises he organized and advised, including Bohemian Surf. 12 The record entirely fails to support a finding that petitioner was in the business of lending money to such ventures. With respect to the so-called loans to Bohemian Surf in the aggregate amount of $30,100, it is clear that petitioner did not make the advances to further any independent trade or business of his own in the special sense of section 166(d), supra, but merely to assist the corporation in its business. Wheeler v. Commissioner, 241 F.2d 883, 884 (C.A. 2, 1957), affirming per curiam a Memorandum Opinion of this Court. We are convinced that petitioner's activities with respect to Bohemian Surf were motivated more by his interest as an investor and an officer of the corporation than as an independent promoter. At no point is there any suggestion that he considered disposing of this corporation following the successful promotional or organizational phases. To the contrary, he continuously increased his investment therein. Cf. *232 Giblin v. Commissioner, supra.It is well settled that activity involving the protection or enhancement of one's investments, or otherwise involving their management, however extensive or time consuming, does not constitute a separate trade or business. Higgins v. Commissioner, 312 U.S. 212 (1941); Thomas Reed Vreeland, 31 T.C. 78 (1958). Moreover, his purported loans to some of the businesses with which he was involved, including Bohemian Surf, are not substantiated by any records, evidence of indebtedness, interest, 13 payments, or collateral. His testimony pertaining to his money-lending activities was unclear and not persuasive. Furthermore, throughout the many years when he was a full-time sales manager of Dow, petitioner never characterized himself for annual Federal income tax purposes as engaged in the business of developing and selling businesses or lending money. Nor did he report any income from his alleged promotional and money-lending activities during the taxable period before us. According to his returns for 1964 and 1965, his largest source of income was derived from his sales manager position with Dow ($53,964 in 1946 and $80,741 in 1965); the major portion *233 of the remaining income was made up of dividends and rentals. Petitioner reported a loss in both taxable years from a real estate joint venture with another individual. In the absence of affirmative evidence to substantiate the claimed promotional and lending activities of petitioner, we find that he has not met his burden of establishing the existence of a separate and distinct business as a promoter of businesses or as a money lender, and we have so found as an ultimate fact. Accordingly, we hold that the $30,100 in controversy was an investment in the common stock of Bohemian Surf and therefore a capital asset; and that petitioner's loss in 1964 is deductible as a loss from the worthlessness of a security under section 165(g), supra. 14 Issue 2. Loans to Bohemian Surf and Wesley Deas. During the taxable year 1965, loans which petitioner had made to Bohemian Surf in the amount of $15,000 and to Wesley Deas in the amount of $2,500 became worthless. Petitioner contends that these losses were proximately connected with his trade or business of lending money to a variety of business enterprises and individuals and, therefore, deductible in full under section 166(a) (1). [5] Respondent *234 agrees that these losses are deductible in the taxable year 1965, but avers that they are deductible only as nonbusiness bad debts under section 166(d) (1) (B), supra. The record shows that petitioner was in the trade or business of being a sales manager for Dow since 1936, including the taxable years involved herein, and he does not contend that either of the debts in question relates to that trade or business. While we are mindful that a taxpayer may have more than one trade or business during the taxable period involved, considering the record in its entirety, we are convinced that the debts in controversy were not created in connection with a separate and distinct trade or business of petitioner within the intendment of section 166(d) (2) (B). For the 15 reasons expressed hereinabove in our resolution of Issue 1, we must sustain the respondent on this issue. Decision will be entered under Rule 50. Footnotes
1. On May 17, 1971, this Court granted the respondent's motion to dismiss for lack of jurisdiction with respect to the taxable year 1967. ↩
2. Until the date of the instant proceeding, the parties believed that this loan had been made to M. H. Wesley rather than to Wesley Deas. ↩
3. SEC. 166. BAD DEBTS. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. ↩
4. Section 165(g) of the 1954 Code states, in pertinent part, as follows: If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.↩
5. On his 1965 income tax return, petitioner deducted these losses as a portion of a claimed "bad debt loss" in the amount of $26,597.07 in a statement attached to Form 2106 pertaining to "employee business expenses," but he does not now argue its deductibility on that basis. ↩